DAVID A. BOLM et al., Respondents, v TRIUMPH CORPORATION et al., Appellants.

Fourth Department, December 14, 1979

430

## APPEARANCES OF COUNSEL

*Hodgson, Russ, Andrews, Woods & Goodyear (R. William Larson* of counsel), for appellants.

*Paul William Beltz, P. C.,* for respondents.

## OPINION OF THE COURT

SIMONS, J.

A trial jury has returned a verdict for $170,000 damages for personal injuries sustained by plaintiff David A. Bolm and $8,000 in favor of Joanne Bolm in her derivative cause of action. The action arises from injuries sustained as the result of a collision involving an automobile and a motorcycle manufactured by defendant Birmingham Small Arms, Ltd., distributed by Triumph Corporation and driven by plaintiff David A. Bolm at the time of the accident. Plaintiffs allege that the motorcycle was defectively designed and they have recovered verdicts on the legal theory of strict products liability.

The action is before us for the third time (see *Bolm v*

*Triumph Corp.,* 41 AD2d 54, affd 33 NY2d 151, 58 AD2d 1014). On the first appeal we sustained plaintiffs' pleading in what was then a novel legal issue in the field of products liability. On the second appeal we reversed a judgment of no cause of action in favor of the defendants. Defendants appeal from the present judgment, contending that the trial court erred in failing to charge contributory negligence, that several evidentiary rulings, particularly those which permitted plaintiff to introduce evidence of postaccident modification and manufacturing technology constituted reversible error, and that the special findings of the jury in the strict products liability action and the breach of warranty cause of action were inconsistent.

Since we have decided that there must be a reversal and a new trial, we set forth our reasons with some particularity in an effort to aid in bringing the litigation to a conclusion.

The facts appear in detail in our prior decisions. It will be sufficient for the purposes of this appeal briefly to note that the accident occurred on October 10, 1967 when plaintiff David Bolm was driving his motorcycle north on Delaware Avenue in Tonawanda, New York, and an approaching automobile turned left in front of him. Plaintiff's motorcycle struck the right front of the car and the force of the impact caused him to slide forward and be propelled over the handlebars of his motorcycle and over the hood of the car. It is alleged that in doing so plaintiff struck the motorcycle gas tank and a parcel grid mounted on it and sustained serious pelvic and genital injuries. The case was tried on the theories of negligence, breach of warranty and strict products liability. The negligence cause of action was withdrawn before the case went to the jury, the jury found against plaintiffs on the breach of warranty and in favor of plaintiffs on the strict liability cause of action.

I

■ At the conclusion of the evidence defense counsel requested that the court include in its instructions a charge on contributory negligence and plaintiffs' burden of proof on that issue. There followed an extended colloquy among court and counsel on whether such a charge was appropriate for causes of action based upon strict products liability and breach of warranty in general and what this court intended by its prior decision (58 AD2d 1014) in particular. The upshot of all of this

was that plaintiffs' counsel withdrew the negligence cause of action and, referring to a Pattern Jury Instruction published before our prior decision, convinced the court that contributory negligence was no longer in the case. It is clear from the record that the court did not find that plaintiffs had sustained their burden of proof that David Bolm was free of contributory negligence as a matter of law. On the contrary, the court intended to submit the issue to the jury as a question of fact until plaintiffs withdrew the negligence cause of action. The court's decision not to charge on contributory negligence was based solely upon its belief that it would be error to charge it in causes of action grounded upon strict products liability and breach of warranty. This failure to charge constitutes reversible error.

The New York rule of strict products liability provides that "the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages; provided: (1) that at the time of the occurrence the product is being used * * * for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived the danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages" (Codling v Paglia, 32 NY2d 330, 342; see, also, Velez v Craine & Clark Lbr. Corp., 33 NY2d 117, 122). This rule requires that plaintiff prove both that he exercised reasonable care in the use of the product and also reasonable care to avoid an accident. The issue becomes particularly acute in so-called "second impact" cases such as this in which the defense alleges not only that plaintiff altered the motorcycle for his own purposes, that the defect was open and obvious and that plaintiff should have discovered it and perceived the danger,[1] but in which it also alleged that plaintiff was negligent in the operation of the motorcycle before the collision. The Court of Appeals pointed to the distinction in the Codling case (pp 343-344): "The contributory fault of a plaintiff could be found in the use of the product for other than its normally intended

---

1. In both the Court of Appeals and in this court two Judges believed this plaintiff guilty of contributory negligence as a matter of law for failure to discover the defect and perceive the danger (see Bolm v Triumph Corp., 33 NY2d 151, 160, id., 41 AD2d 54, 61).

purpose or other than in the manner normally intended. This jury was properly charged on this aspect of the case, and its finding in favor of Paglia as plaintiff cannot be disturbed. Or, contributory fault could be found in the failure to exercise such reasonable care as would have disclosed the defect and the danger attributable thereto. Here again there is no basis for a finding of error in the record in this case. *There remains, however, the question whether Paglia independently exercised that degree of care for his own safety that a reasonably prudent person would have exercised under the same circumstances, quite apart from the defective steering mechanism. Thus, in this case, the issue whether Paglia as plaintiff had exercised reasonable care in the operation of his automobile, quite separate and distinct from the defective steering mechanism, and if he did not whether such lack of care was a substantial factor in producing his damages, was never submitted to the jury.*" (Emphasis added.)

The Court of Appeals has consistently adhered to this formulation of the rule *(Velez v Craine & Clark Lbr. Corp., supra; Bolm v Triumph Corp.,* 33 NY2d 151, 159, *supra; Micallef v Miehle Co.,* 39 NY2d 376, 387-388).

When this case was last appealed, counsel argued the applicability of the rule of contributory negligence. We said then, and we repeat it so that there may be no doubt on the matter, "[b]efore a plaintiff may recover under the theory of breach of warranty or strict liability in tort (and, of course, in negligence) he must prove that he is free of any negligence which caused or contributed to the cause of the accident" *(Bolm v Triumph Corp.,* 58 AD2d 1014, *supra).*

■ In concluding this point, we are constrained to note that decisions of the Appellate Division made in a case, whether correct or incorrect, are the law of the case until modified or reversed by a higher court. The trial court to which we remit a case for trial is bound by what is decided here. It may not depart from our decisions because of what it may view as error in light of subsequent decisions in other similar cases or critical comment by periodical writers. If the facts at retrial are substantially the same as those presented in the prior appeal, the trial court must adhere to this court's determination of the controverted questions of law (10 Carmody-Wait 2d, NY Prac, § 70:453; Siegel, New York Practice, § 448).

## II

Next, defendants complain of various evidentiary rulings.

■ We address, first, their contention that the trial court improperly received evidence of postaccident modifications, testing and technology concerning their products and those of their competitors. The evidence was received without limitation to prove defendants' culpable conduct. Plaintiffs contend that it was properly received for that purpose and rely upon the Second Department's decision in *Barry v Manglass* (55 AD2d 1; followed in *Iadicicco v Duffy,* 60 AD2d 905) and the California decision on which *Barry* was premised, *Ault v International Harvester Co.* (13 Cal 3d 113). For the reasons stated below, we think that plaintiffs' case is distinguishable and that receipt of this evidence was also reversible error.

■ ■ A plaintiff, to prove a strict products liability cause of action, must prove that defendants' product was defective (i.e., that it was unreasonably dangerous *[Bolm v Triumph Corp.,* 33 NY2d 151, 158, *supra]* or, stated another way, that it was not reasonably safe [see 1 PJI 2:141]) and that the defect was a substantial factor in bringing about his injuries *(Micallef v Miehle Co.,* 39 NY2d 376, 385-386, *supra; Codling v Paglia,* 32 NY2d 330, 343, *supra).* This action differs, however, from some products liability cases, the *Codling* and *Barry* cases for instance, in that it is a "design defect" case. Plaintiffs do not contend that there was something wrong with defendants' product in the sense that it was made defectively or had a mechanical flaw. Rather, they contend that defendants' whole line of products was defective because with knowledge of the dangers and options available, the manufacturer conceived a potentially dangerous design. In such cases, defendant is liable if it manufactured and marketed the product when a reasonable person with knowledge of the harmful character of the product would have concluded that the product should not have been marketed in that condition. The manufacturer's liability is determined by the traditional reasonable man test used in negligence actions. *(Martin v Dierck Equip. Co.,* 43 NY2d 583, 590; *Micallef v Miehle Co.,* 39 NY2d 376, 387, *supra; Bolm v Triumph Corp.,* 33 NY2d 151, 158-159, *supra; Biss v Tenneco, Inc.,* 64 AD2d 204, 205-207.)

To prove defendants' lack of care plaintiffs had to establish that defendants had knowledge that the design of its gas tank and grid was potentially dangerous and that other, safer designs were available and feasible. They did so by the testimony of expert witnesses who based their opinions in large

part on subsequent design modifications and on findings from postaccident safety studies and tests.

The general rule is that evidence of subsequent repairs or other remedial measures is not admissible as proof of negligence or culpability, because the fact that repairs were subsequently made is irrelevant on the issue of defendants' lack of care at the time of the accident. The rule is also supported by policy reasons intended to encourage postaccident repairs. The evidence may be admissible for any other relevant purpose and it frequently is admitted to prove defendant's control of the premises at the time of the accident (if the point is disputed), or for impeachment purposes (Richardson, Evidence [10th ed], § 168; 2 Bender's New York Evidence, § 58.02 [3] [b] [ii], [iii]; Fisch, New York Evidence, §§ 237, 798, and cases cited therein). Some jurisdictions permit it as evidence of the feasibility of preventative measures (see McCormick, Evidence [2d ed], § 275, p 667; and see Federal Rules of Evidence, rule 407), and there is limited authority that it is admissible in New York for that purpose (*Miller v Ocean S. S. Co.*, 118 NY 199, 212). A few courts have held in recent decisions that the exclusionary rule does not apply in products liability cases and that evidence of subsequent modifications or repairs is admissible generally (see *Barry v Manglass,* 55 AD2d 1, *supra; Ault v International Harvester Co.,* 13 Cal 3d 113, *supra;* and see, generally, Products Liability-Subsequent Repairs, Ann. 74 ALR2d 1001; Costello and Weinberger, The Subsequent Repair Doctrine and Products Liability, 51 NYS Bar J 463).

In *Ault* plaintiff was injured while riding as a passenger in a motor vehicle which crashed, allegedly because of a defective aluminum gearbox and the California court permitted the jury to hear evidence that the manufacturer had modified the vehicle after the accident by installing a more durable iron alloy gearbox. The decision rests upon the court's interpretation of a California evidence statute governing the receipt of subsequent repair evidence (and which did not exclude such evidence in products liability cases), California's rule on liability in design defect cases which differs from New York's rule in that it requires only proof that the product is defective (see *Cronin v J.B.E. Olson Corp.,* 8 Cal 3d 121), and the California court's view that the policy reasons supporting exclusion did not apply in products liability cases.

The Second Department case of *Barry v Manglass (supra)* involved a manufacturing flaw (a defective motor mount)

rather than a design defect. The court permitted evidence of recall letters dealing with the specific defect alleged to have caused the accident. The first letter was sent two months after the accident and a second eight months later to those owners failing to respond to the first letter. The evidence was admissible, quite apart from the rule under consideration, to establish that the defect existed at the time the product left the hands of the manufacturer. *Ault,* based as it is on a different definition for strict liability in tort, is not persuasive authority when applied to this case and the *Barry* decision, although it speaks in broad language and is clearly distinguishable on its facts is not authority for abandoning in design defect cases the traditional New York rule excluding evidence of subsequent modifications.

Evidence of postaccident design changes should be admissible, however, with appropriate limiting instructions, if the defendant contests the issue of feasibility for the reasonableness of choosing among various alternatives and adopting the safest one feasible is not only relevant in a design defect action, it is at the very heart of the case. Thus evidence of subsequent modification should be admissible if it is probative of what alternatives were available to the manufacturer at the time the product was made so that the jury may determine whether he acted prudently in deciding upon its final design. However, in this case defendants did not deny that alternate designs were feasible. They conceded that the grid had been removed from a later 1966 model of this motorcycle and from all defendants' models by 1968, and that the gas tank had been modified in 1978. Their main defense was that they had not violated any duty owed to plaintiff and that even if they had, plaintiffs' damages were not caused by the defective design of the gas tank or the parcel grid on top of it.

As for plaintiffs' evidence of postaccident studies and safety tests, if such evidence was admissible at all (since feasibility was conceded) it was only admissible to prove that defendants had failed to use reasonable care in the design of the motorcycle. Much of the evidence related to tests and studies employing methodology not used in 1966, when this motorcycle was manufactured, and some of it had not even been developed then. Apparently the evidence was received because the court believed that such tests were technically or ultimately possible at that time and that defendants therefore should have developed and used them. It was error to receive this evidence

and the testimony based upon it because plaintiffs did not establish preliminarily that such postaccident tests were within the state of the art at the time of manufacture.[2]

Defendant also assigns as error other evidentiary rulings of the court.

■ A witness named Ferrari was permitted to testify that he had a similar accident while operating one of defendants' motorcycles and that as a result he lost his penis, his scrotum was ripped and his testicles had to be pushed inside his body. Defense counsel conceded that the evidence was admissible but solely to prove that the product was hazardous. The court so instructed the jury and its ruling was in accord with the general rule that proof of similar accidents may be received to establish a dangerous condition (Woldman v State of New York, 72 AD2d 665; and Richardson, Evidence [10th ed], § 196; Fisch, New York Evidence, § 202). Defendants then attempted to offer evidence that the Ferrari accident occurred after the Bolm accident so that the jury would not infer notice of the defect to defendants from it. The trial court should not have prevented defendants from doing so. They were entitled to prove the dates of the two accidents and that the Bolm accident was the first of its kind (cf. Stein v Trans World Airlines, 25 AD2d 732).

■ During the trial defendants offered evidence of the impact experiments conducted by their experts. Since plaintiff had sold his motorcycle as scrap shortly after the accident, defendants selected a "similar" 1963 gas tank for the purpose. The trial court ruled that the tank was not admissible and foreclosed any evidence of the results because the gas tank was not taken from a 1966 motorcycle. The exhibit and testimony should have been received because there was credible evidence that the two tanks were the same in all signifi-

---

2. Ordinarily it is the defendant who attempts to prove as a defense that its design conforms to the state of the art at the time of manufacture (see Bolm v Triumph Corp., 33 NY2d 151, 157-158). State of the art has been defined as "the safety, technical, mechanical and scientific knowledge in existence and reasonably feasible for use at the time of manufacture" (Uniform Product Liability Law, § 106, subd [a] [reprinted in 44 Fed Reg 2996, 2998]) and, also, as the "contemporaneous practical skill in performance exercised by the designers of products" (O'Donnell, Design Litigation and the State of the Art: Terminology, Practice and Reform, 11 Akron L Rev 627, 630-631). Thus, state of the art refers to what is realistically capable of achievement, not merely industry custom (Schwartz Foreword: Understanding Products Liability, 67 Cal L Rev 435, 482; see The T. J. Hooper, 60 F2d 737, 740 [LEARNED HAND, J.]; Horn v General Motors Corp., 17 Cal 3d 359).

cant respects. The fact that they were manufactured in different years went to the weight to be accorded to the evidence, not its admissibility.

■ The trial court also committed error in excluding evidence that the motorcycle had been altered after it left the possession of the defendants. Since the "best evidence" was unavailable, it was error to preclude testimony from photographs that the motorcycle had been altered.

We have considered the other evidentiary matters raised by counsel and they require no comment.

### III

■ The proof established that plaintiff purchased the motorcycle secondhand from a private owner. The court erred therefore in submitting the breach of warranty cause of action to the jury (see *Martin v Dierck Equip. Co.,* 43 NY2d 583, 589-590, *supra; Titlebaum v Loblaws, Inc.,* 64 AD2d 822, 823). It should have been dismissed, but the error was harmless in view of the jury's verdict.

### IV

■ We reiterate what we said in our last decision in this case, that careful interrogatories should be prepared and submitted to the jury which list the various elements of the causes of action. The court submitted interrogatories on this trial, but the answers were apparently not examined by the court and were not made a part of the record until after the trial was over and the jury had been discharged. Obviously, defense counsel had no opportunity to make a timely objection that the answers were inconsistent or to request that the jury reconsider its verdict. Defendants now press the issue on appeal, but since the jury found in their favor on the warranty issue and we are reversing the judgment on appeal, we do not consider the point. It hardly seems necessary to point out that interrogatories should be examined before the jury is discharged so that objections to the verdict and to the jury's findings may be made and any error corrected.

Since plaintiffs voluntarily withdrew their negligence cause of action and the breach warranty cause fails as a matter of law, the retrial will be solely on the strict products liability claim.

The judgment should be reversed and a new trial granted in accordance with this opinion.

CARDAMONE, J. P., HANCOCK, JR., DOERR and MOULE, JJ., concur.

Judgment unanimously reversed, on the law and facts, and a new trial granted, with costs to abide the event.