Fausto Caprara, Respondent, v Chrysler Corporation et al., Appellants, et al., Defendants.

Third Department, December 27, 1979

APPEARANCES OF COUNSEL

*Skadden, Arps, Slate, Meagher & Flom (Sheila L. Birnbaum, William R. Meagher* and *Marcy Louise Kahn* of counsel), and *Lester, Schwab, Katz & Dwyer* for appellants.

*E. Stewart Jones, Sr.,* and *Malatesta & Purello (Robert M. Cohen* and *Alfred C. Purello* of counsel), for respondent.

**OPINION OF THE COURT**

GREENBLOTT, J. P.

This is an action in which plaintiff has recovered damages for the severe personal injuries he suffered as a result of an automobile accident. In his complaint, he alleged causes of action in negligence, breach of warranty and strict products liability. Based upon negligence and strict products liability, the jury returned a verdict against Chrysler Corporation and Chrysler Motors Corporation (Chrysler) for $3,600,000. Chrysler's subsequent motions to set aside the verdict as against the weight of the evidence, contrary to law and excessive were denied by the trial court.

The accident occurred at approximately 1:00 o'clock in the morning on December 7, 1969, while plaintiff was operating a 1969 Dodge Coronet manufactured by Chrysler. Plaintiff was driving the vehicle westerly down Congress Street in Troy, New York, when the car failed to negotiate a left-hand curve and collided with a parked car, a telephone pole and a house. Plaintiff testified that as he was traveling at about 25 miles per hour, and approaching the curve, he attempted to turn, but the steering wheel "seized right up". He applied the brakes and cried out, "Oh, my God, the steering won't turn". The accident severely injured plaintiff, leaving him a quadriplegic. The three passengers were not injured seriously.

At the time of the accident, the car was one year old and had been driven approximately 9,100 miles. Plaintiff had been the principal operator of the vehicle since its purchase, and until the time of the accident, he had never experienced any trouble with the steering.

The theory on which plaintiff sought to recover from Chrysler was that the vehicle had been manufactured with a defective lower right front ball joint. In his bill of particulars, plaintiff contended that defendant improperly designed and assembled the ball joint, causing the ball to wear excessively and abnormally, and to eventually become "egg shape". This created a dangerous condition of "play" in the joint, causing it to seize or partially lock up, thereby preventing plaintiff from controlling the vehicle in a normal manner.

■ Chrysler raises several points to support its contention that the judgment must be reversed. Initially, we reject Chrysler's position that the overwhelming weight of the credible evidence established that plaintiff's failure to control the car was not due to a defective ball joint, but, rather, due to excessive speed in negotiating the curve. Although Chrysler presented testimony that plaintiff was operating the car at 40 to 50 miles per hour, and other evidence which tended to support its position, there was testimony by plaintiff's witnesses which estimated the speed of plaintiff's vehicle at 25 to 30 miles per hour. This conflict in the evidence raised credibility questions which the jury could resolve in favor of plaintiff (e.g., *Kelly v Watson Elevator Co.,* 309 NY 49, 51).

Turning to the claim of defect in the ball joint, plaintiff's expert, William Burrill, testified that in his opinion the ball joint was defectively manufactured. He stated that his tests of the right lower ball joint revealed that excessive play existed

in the ball joint. His tests showed that the lateral movement of the ball joint exceeded 250 thousandths of an inch. He testified that this exceeded the allowable play of a ball joint as established by the New York State Department of Motor Vehicles and that the car would not pass an inspection test. He further testified that he detected a "binding action" in the ball joint, which could cause a binding condition in the steering of the car.

Plaintiff also called Daniel Doran, an engineer and a supervisor in Chrysler's Steering and Suspension Department. He testified that subsequent to the accident, Chrysler modified its ball joints by adding a plastic insert which eliminated end play or movement. He further testified that movement results in wearing away.

■ On the basis of plaintiff's expert testimony, plaintiff established in strict products liability that a defect in the ball joint caused the accident. Moreover, as was succinctly explained by Chief Judge BREITEL, "[i]n a products liability case it is now established that, if plaintiff has proven that the product has not performed as intended and excluded all causes of the accident not attributable to defendant, the fact finder may, even if the particular defect has not been proven, infer that the accident could only have occurred due to some defect in the product or its packaging" *(Halloran v Virginia Chems.,* 41 NY2d 386, 388). Plaintiff's testimony that the steering wheel "seized right up" and that it "would not turn" was sufficient to establish prima facie in strict products liability that a defect in the design or construction of his automobile existed at the time of the accident *(Iadicicco v Duffy,* 60 AD2d 905, 906; see *Jackson v Melvey,* 56 AD2d 836).

Plaintiff presented evidence that excluded all causes of the accident not attributable to Chrysler. From this evidence the jury could find that intoxication, excessive speed, damage due to misuse, and poor weather were not factors causing the accident (see *Golden v General Motors Corp.,* 71 AD2d 717). Accordingly, the jury could properly conclude that the accident was due to a defect in the vehicle, i.e., a defective ball joint *(Halloran v Virginia Chems., supra).*

■ We are also presented with the question of whether the trial court committed reversible error in allowing plaintiff to introduce into evidence testimony concerning Chrysler's post-accident design change of its lower ball joints. We conclude that it did not.

■ Preliminarily, we conclude that the evidence of design change did not constitute an improper mid-trial change of theory. Defective design was within the pleadings and, as such, proof of a potentially safer design was properly permitted to show that the original ball joint was defective. This also answers Chrysler's contention that the trial court improperly instructed the jury as to the effect it could give to the design change testimony. The court charged the jury that a design change does not as a matter of law establish that a defect exists with respect to a particular design, and this was consistent with the court's sending the case to the jury on a theory of a manufacturing defect.

■ We hold that evidence of postaccident design changes should, as a general rule, be admissible into evidence in strict products liability cases involving a physical defect. Since a plaintiff in a strict products liability case need not establish the particular defect of which he complains, evidence of a postaccident design change is relevant to assist the jury where, as here, it has the right to infer that the accident was due to "some defect" in the product *(Halloran v Virginia Chems., supra)*. Since the jury may infer that a defect caused the accident, logic compels the conclusion that they should be entitled to know that the very defect claimed to have caused an accident has been subject to a postaccident modification in design.

Moreover, to arbitrarily prohibit such evidence on the grounds of public policy would unjustifiably undermine the doctrinal underpinnings of strict products liability, which themselves are based upon public policy (see *Codling v Paglia,* 32 NY2d 330, 340-341). Strict products liability does not deal with fault, negligence or culpability; rather, it focuses on the product *(Barry v Manglass,* 55 AD2d 1, 7), and protection of the consumer in a market characterized by mass production, mass advertising, mass distribution and technical sophistication. Thus, the subsequent repair doctrine, which was developed in the content of fault, has no theoretical basis to justify its wholesale application in products liability cases. The doctrine of strict products liability was imposed with a view to encourage safety in design and production *(Codling v Paglia, supra,* p 341), and evidence of postaccident design modifications in a product should accordingly be admissible for the jury's consideration.

■ Turning, then, to the evidence of postaccident change in

design in this case, Daniel Doran, called by plaintiff, testified that end play or movement in the ball joint, which results in wearing away, was reduced by the modification. This testimony clearly supported plaintiff's contention as espoused in his bill of particulars and supported Burrill's testimony that excessive lateral movement existed in the ball joint. Contrary to the reasoning of the dissent, the jury was entitled to conclude from this testimony that the postaccident design change did correct the defect which plaintiff contended existed in his 1969 automobile. The jury could properly find that since the modification in design reduced movement, the ball joint in plaintiff's automobile was excessively loose. Therefore, the dissent incorrectly contends that the record is devoid of evidence that the change cured the defect.

Additionally, although Burrill was not an expert in the design of ball joints, his testimony that the design change alleviated the problem of excessive movement in the ball joint was not speculative and irrelevant as claimed by the dissent. His testimony in this regard was not directed towards the question of proper design. To the contrary, it was clearly relevant on the issue of whether excessive movement existed in the ball joint of plaintiff's automobile, which had been the principal thrust of his previous expert testimony, and was admissible on that point. Therefore, the trial court improperly struck Burrill's testimony in regard to the effect of the postaccident change in design. However, no error resulted because the court did not inform the jury that Burrill's testimony on this subject had been stricken.

■ Chrysler also contends that the introduction into evidence of color photographs of plaintiff with Crutchfield tongs on a Stryker frame, and the showing of a motion picture portraying the nature and extent of plaintiff's injuries constituted reversible error. First, we find no error in the admission of the color photographs showing plaintiff lying on a Stryker frame with Crutchfield tongs attached to his scalp. These photographs were not inflammatory, and they assisted the jury in understanding the medical evidence (New v Cortright, 32 AD2d 576).

■ Likewise, we conclude that the trial court did not abuse its discretion in allowing plaintiff to exhibit a silent motion picture, narrated by plaintiff's brother, which purported to show a portion of the typical daily routine of plaintiff being tended to at his parents' home. Chrysler contends that the

motion picture was not essential to plaintiff's case and that it was cumulative and highly prejudicial. Chrysler takes the position that prior to the showing of the movie, there was ample uncontradicted medical testimony and that the movie was shown to arouse, intensify and appeal to the jury's emotions. Whether a motion picture is admissible is a matter within the sound discretion of the trial court (*Boyarsky v Zimmerman Corp.*, 240 App Div 361, 364; Richardson, Evidence [Prince—10th ed], § 138), and depends upon the facts and circumstances of each case. Here, the 10-minute film illustrated in an informative manner the impact the injury has had on plaintiff's life, and while the scenes are undoubtedly unpleasant, so too is plaintiff's injury. We believe that the probative value of the film outweighed any prejudice which might result. The trial court first viewed the movies in chambers, and we cannot say that it abused its discretion in allowing the film into evidence. Moreover, the mere fact that there is ample uncontradicted medical testimony concerning the nature and extent of plaintiff's injuries should not, in and of itself, prevent a plaintiff from showing to the jury a motion picture illustrating in an informative and noninflammatory manner the impact that the accident has had on his or her life.

■ Next, we find unpersuasive Chrysler's contention that the trial court committed reversible error in charging the jury on the question of whether plaintiff had violated subdivision (a) of section 1126 of the Vehicle and Traffic Law. The court instructed the jury substantially in accordance with PJI 2:26, with appropriate modifications, as requested by Chrysler's trial counsel. Although plaintiff had the burden of proving his freedom from contributory negligence under the law as it then existed at the time of the accident, the court properly placed the burden upon Chrysler to prove that plaintiff had violated the statute (cf. *Miller v Trindl Prods.*, 38 AD2d 787; PJI 2:26, 2:27, 2:35 and comments thereunder). The court also correctly denied Chrysler's request to charge the jury that as a matter of law plaintiff had violated the statute; the issue was a question of fact for the jury to resolve.

■ Chrysler's contention that the verdict was inconsistent because the jury found in favor of the retailer but against the manufacturer was not preserved for review. Prior to delivering its charge to the jury, the trial court provided each trial counsel with copies of the interrogatories it intended to sub-

mit to the jury, and gave each attorney an opportunity to object to them. None of the attorneys objected to the form of the interrogatories which in effect permitted the jury to find Chrysler liable and not the retailer. Furthermore, Chrysler's trial counsel failed to request a charge on this subject prior to the court's submission of the case to the jury. It was not until after the jury retired to deliberate did Chrysler's attorney object to the interrogatories.

It is thus apparent that Chrysler's attorney had an opportunity to object to the form of the interrogatories prior to the charge to the jury and before the jury retired to commence its deliberations, but failed to object until after the jury had retired. CPLR 4110-b provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating the matter to which he objects and the grounds of his objection." Having failed to timely object, the interrogatories became the "law of the case" (see *Ruff v Snyder*, 48 NY2d 756; *Olsen v St. Margaret of Scotland R. C. Church*, 21 AD2d 827, 828; 8 Carmody-Wait 2d, NY Prac, § 62.10).*

 Chrysler also contends that the verdict of $3,600,000 in compensatory damages is excessive. We agree. In our view, the judgment should be reversed and a new trial granted with respect to the issue of damages only, unless, within 20 days of the order to be made hereon plaintiff shall stipulate to a reduction of the verdict in his favor from $3,600,000 to $2,000,000. (See *Ukson v City of New York*, 68 AD2d 926.) We have examined the remainder of Chrysler's contentions and find them to be without merit.

The judgment should be modified, on the law and the facts, and a new trial ordered as to the issue of damages only, unless, within 20 days after the service of a copy of the order to be entered herein, the plaintiff shall stipulate to reduce the amount of the verdict in his favor to $2,000,000, in which event, the judgment, as so reduced, should be affirmed, with costs to plaintiff.

MIKOLL, J. (dissenting). I respectfully dissent.

Permitting evidence of Chrysler's subsequent change in design of its ball joint to be introduced in evidence was highly

---

* We also note that Chrysler's trial counsel stipulated on the record that Chrysler agreed to indemnify and hold harmless Ken Goewey Dodge, Inc. "with regard to any judgment which may be rendered against Ken Goewey Dodge, Inc."

prejudicial to the defendant. Except for the fact that the record discloses that a postaccident design change was made, it is otherwise devoid of evidence that the change cured a defect in the 1969 design of ball joints found in plaintiff's car. The testimony of plaintiff's expert, Burrill, who attempted to offer testimony in that regard, was properly stricken. Mr. Burrill acknowledged that he was not an expert in the design of ball joints and that he had no knowledge of the reason for the subsequent design change or what it purported to accomplish. Lacking expertise in the matter, it was entirely appropriate to strike his testimony as speculative and irrelevant. The subsequent failure of the court to advise the jury that Mr. Burrill's testimony had been stricken on this vital point was highly prejudicial to the defendant. This error takes on significant importance in view of the closeness of the case on the merits *(Weiner v Serpa Auto Wreckers,* 24 NY2d 845). A subsequent change in design is often implemented for reasons other than to cure dangerous defects. Here the jury had before it the prejudicial impact of a design change whose relevance was not established. All the evidence on design change, including that of the witness Doran, indicated that the subsequent design change was made to prevent unscrupulous and unnecessary ball joint replacements by repair garages and that, otherwise, both designs of ball joints, that contained in plaintiff's car and that subsequently used by Chrysler in its vehicles, operated in the same way. Although I concede that subsequent design change may be introduced under appropriate circumstances, such criteria have not been met in this case.

This accident occurred in 1969. Under the law then extant, plaintiff had the burden of proving his freedom from contributory negligence in the negligence action and in the products liability cause of action. In charging that the defendant had the burden of proving whether plaintiff had violated sections of the Vehicle and Traffic Law, the court misstated the law on burden of proof. This constituted prejudicial error to the defendant. The gravity of the error is amplified because of the closeness of the case.

Finally, the strict products liability verdict was inconsistent. The manufacturer, Chrysler, was held responsible for plaintiff's injuries, but the retailer, Ken Goewey Dodge, was held not to be so. The retailer as well as the manufacturer of defective goods is subject to strict liability *(Mead v Warner*

*Pruyn Div., Finch Pruyn Sales,* 57 AD2d 340). In view of the fact that the court's charge on burden of proof has tainted the negligence action also, this inconsistency in verdict cannot be allowed to stand.

The judgment should be reversed and a new trial ordered.

SWEENEY, KANE and MAIN, JJ., concur with GREENBLOTT, J. P.; MIKOLL, J., dissents and votes to reverse in an opinion.

Judgment modified, on the law and the facts, and a new trial ordered as to the issue of damages only, unless, within 20 days after the service of a copy of the order to be entered herein, the plaintiff shall stipulate to reduce the amount of the verdict in his favor to $2,000,000, in which event, the judgment, as so reduced, is affirmed, with costs to plaintiff.