*201 OPINION OF THE COURT
Allen Murray Myers, J.
This is a suit for personal injuries sustained by plaintiff Sheilah Brown on May 14, 1976 as she removed some paper from her employer’s Michael Miracle Automatic paper cutter. The "guillotine”-style knife blade on the paper cutter descended without warning and, as a result, a piece of Sheilah Brown’s distal phalanx of the right index finger was amputated.
The complaint in this action alleged liability of the defendant seller of the machine on several theories of law, i.e., negligence, strict torts liability and breach of express and implied warranty. A jury trial concluded with a verdict for the plaintiff in the sum of $200,000.
Early in the trial, this court ruled upon the admissibility of certain testimony concerning repairs made to the defective machine by the defendant subsequent to the accident.
I allowed the testimony of subsequent repairs, contrary to the long-standing rule against the admission of such evidence to prove the existence of a defect in negligence cases (see Richardson, Evidence [10th ed], §§ 168, 221).
The old rule against admission of this evidence came into being when personal injury cases were based solely on negligence. The rule was invoked in the name of social policy, to encourage the making of repairs so as to reduce the risk of a recurrence of the injury to persons who might subsequently encounter the defective condition. (2 Wigmore, Evidence [3d ed], § 283.) It was felt that the admission of such evidence would discourage persons from making repairs after the accident.
In the case at bar, however, I permitted testimony of the postaccident insertion of a lock washer around the screw or bolt that held the cam to the shaft of the paper cutter. From that evidence, the jury could infer that at the time of the accident the cam was loose, thus causing the accident. Whether this was due to faulty design, faulty manufacture or faulty repairs was for the jury to conclude.
I was persuaded to allow this evidence by Justice Shapiro’s reasoning in Barry v Manglass (55 AD2d 1) that whatever the validity of the old rule was for negligence cases (and that is questionable), the same policy consideration does not apply to products liability actions. A different policy consideration *202 enters here. Usually, the products liability defendant manufactures "tens of thousands of units of goods; it is manifestly unrealistic to suggest that such a producer will forego making improvements in its product, and risk innumerable additional lawsuits and the attendant adverse effect upon its public image, simply because evidence of adoption of such improvement may be admitted in an action founded on strict liability for recovery on an injury that preceded the improvement.” (Barry v Manglass, supra, at p 8; see, also, Ault v International Harvester Co., 13 Cal 3d 113; Sutkowski v Universal Marion Corp., 5 Ill App 3d 313; 84 ALR3d 1220, 1232.) More important, the theory of strict tort products liability itself had as its object ensuring the safety of consumer products. (See Codling v Paglia, 32 NY2d 330.) Exclusion of such evidence in a case might preclude recovery and thereby defeat the very purpose of strict liability litigation (Products Liability and Evidence of Subsequent Repairs, 1972 Duke LJ 837, 848-850, as referred to in Barry v Manglass, supra).
While Barry v Manglass held that recall letters from the defendant automobile manufacturer (not evidence of subsequent repairs) were admissible in products liability cases, the Appellate Division, Third Department, by Greenblott, J., on December 27, 1979 in Caprara v Chrysler Corp. (71 AD2d 515) held that it was not error for a trial court to admit evidence of a postaccident design change in a products liability case. (But see Bolm v Triumph Corp., 71 AD2d 429.) The court in Caprara held that, since (p 521) "the jury may infer that a defect caused the accident” (Halloran v Virginia Chems., 41 NY2d 386), "logic compels the conclusion that they should be entitled to know that the very defect claimed to have caused an accident has been subject to a postaccident modification in design.” As pointed out in the dissent by Mikoll, J., in Caprara, at page 525, evidence of a postaccident design change by Chrysler Corp. is not evidence that the change cured a defect in plaintiff’s own car or indeed that there was a defect in plaintiffs car. The jury, however, was allowed to infer that the design change would have cured a defect in that car. How much more persuasive is the evidence admitted in our case, that repairs were made to this paper cutter by the defendant after the accident? It leads one even more strongly to the conclusion that there was a defect in the paper cutter in the case at bar.
The Fourth Department has come to a more restrictive *203 conclusion in Bolm v Triumph Corp. (supra). It was there held that evidence of postaccident design modifications should be limited to "design defect” cases as opposed to cases of defective manufacture. Since our case included a defective design question as well as an individual flaw question, the evidence is admissible even under the Fourth Department’s stricter Bolm rule.
It is clear that the trend of recent decisions is in favor of the admission of such evidence in products liability cases. The Appellate Division, Second Department, has held that to exclude evidence of recall notice is reversible error. (Iadicicco v Duffy, 60 AD2d 905.)
Indeed, Professor Joseph M. McLaughlin, in his New York Law Journal article of March 14, 1980 (pp 1, 28, col 2), in noting these recent changes, calls for the Law Revision Commission "to impose a measure of order upon the rules in products liability cases.” This court, with a case on trial and an immediate ruling to be made on the admissibility of evidence, decided to follow the modern trend toward fewer restrictions upon the admission of relevant evidence.