OPINION OF THE COURT
Ira Gammerman, J.
issue
Are postaccident design changes discoverable and admissible in products liability cases based on allegations of defective design?
FACTS
This action arises from a single vehicle accident which occurred on July 8, 1973, resulting in one death and one injury. Plaintiffs allege that the accident was caused by the defective design, manufacture and assembly of a 1972 Volkswagen van. Their claims are based on theories of strict liability in tort, breach of warranty, and negligence. Plaintiffs seek, by notice dated March 12, 1980, documents *763 relating to postaccident design changes of “the type of van involved in this litigation.” In response to that notice, defendants move for a protective order, arguing that such information is neither discoverable nor admissible and, further, that plaintiffs’ notice is too broad and vague. Plaintiffs cross-move for an additional deposition of an employee of defendant specifically with respect to postaccident design changes.
LAW
The admissibility of postaccident changes has not been definitively ruled upon in this department. The appellate courts, however, have been reluctant to extend the rule against admission of proof of subsequent repairs to at least some cases involving products liability. In Barry v Manglass (55 AD2d 1) the Second Department ruled that recall letters issued by the defendant General Motors (relating to possible safety hazards in engine mounts of a model car which it manufactured) were admissible. In rejecting the defendant’s argument that the recall letters were barred by the “subsequent repair doctrine”, the court held that this rule of nonadmissibility has no applicability in cases of defectively manufactured products. The recall letters were deemed admissible for the purpose of proving that the defect existed in the product at the time of its manufacture. The court, in Barry, drew a distinction between the ordinary negligence case, in which proof of subsequent repairs is not admissible, and strict liability in tort cases, in which liability is not founded on fault, but rather on a defect irrespective of fault. Indeed, in referring to strict liability cases, the Barry court specifically stated (supra, p 7) “[i]n such cases, we are not dealing with fault or negligence or culpability, but, regardless of any of them, with a defect which existed in the product”.
The Second Department’s approach in Barry was adopted by the Third Department in Caprara v Chrysler Corp. (71 AD2d 515). There, the court held that a post-accident design change is admissible in a strict products liability case. Following the reasoning of Barry, the court reiterated that strict products liability does not deal with *764 fault, negligence, or culpability, but rather focuses on the condition of the product.
The admissibility of postaccident design changes was discussed by the Fourth Department in Bolm v Triumph Corp. (71 AD2d 429). Unlike the cases just cited, Bolm did not involve an allegation of a defect in manufacture, but rather a defect in design. The Fourth Department recognized that the liability of a defendant for a defect in design is one based on negligence, citing Micallef v Miehle Co. (39 NY2d 376). To recover on that theory, plaintiff must establish that defendant had knowledge of the hazard created by the design at the time of design and that other, safer, designs were then available and economically feasible. In Bolm, the court concluded that the Barry holding of the Second Department was overly broad and should be limited to cases of defective manufacture, since fault is not an element in that theory of recovery. The court declined to extend the Barry analysis to a case of defective design, in which culpability or fault must be proven.
Nevertheless, the court held that in some defective design cases, evidence of postaccident design changes is admissible “with appropriate limiting instructions, if the defendant contests the issue of feasibility for the reasonableness of choosing among various alternatives and adopting the safest one feasible is not only relevant in a design defect action, it is at the very heart of the case” (Balm v Triumph Corp., supra, at p 437). The court ruled that evidence of subsequent design modification is admissible if it is probative of alternatives available to the manufacturer at the time the product was made. Such information could aid the jury in determining whether or not the manufacturer acted prudently in electing to use a particular design. (The court in Bolm held that postdesign changes were not admissible in that case, inasmuch as defendant had conceded feasibility.)
DECISION
Defendants vigorously argue here that the distinction between a case of manufacturing defect, as opposed to one of design defect, is critical in determining whether or not post-accident changes are admissible.
*765 It should be noted that here, as in many product liability cases, multiple theories of liability are advanced, including defective design, defective manufacture, and breach of warranty. The distinction made by the Fourth Department in Bolm, between a manufacturing defect case, in which no fault is alleged, and a design defect case, which is founded on negligence, is one which, in the view of this court, should not be adopted in this department. The rule in ordinary negligence cases that excludes postaccident repairs is designed to encourage such repairs on the part of defendants. However, it is always in the economic self-interest of a manufacturer of mass-produced products to improve and repair those products if they are defective, whether that defect is the result of manufacturing errors or the result of negligent choice of design.
A distributor of mass-produced products has thousands of items on the market. If those goods are defectively manufactured or designed, the manufacturer or distributor faces far greater potential liability by continuing production of such products than the potential liability imposed in a single case where evidence of a subsequent design change may be introduced. It cannot be argued that these economic forces will exert one effect at the levels of production and assembly and a different effect on research and design.
While the legal analysis differs in cases alleging defective manufacture and those alleging defective design, the incentive to produce safe products and goods and to avoid liability is the same. Of course, appropriate limiting instructions should be given to juries in design defect cases that the fact that a postaccident change was made does not, by itself, prove that the initial choice of design was negligent.
Defendants’ motion for a protective order is therefore denied. Plaintiffs are entitled to the documents they seek and are entitled to a continued examination of defendants’ employee on the issue of postaccident design change. The defendants have produced no proof to indicate that the opinion of its employee was obtained specifically for this litigation. The information sought by plaintiff from the witness has evidently been acquired by him in the normal course of his employment. The defendants are therefore di *766 reeled to produce Airbert Kolmes for further examination before trial to respond to the questions previously objected to, and to those questions which would reasonably flow from such answers. The court does not find the demand for production and inspection of the documents relating to post-accident design change to be either too broad or too vague.