Argued and submitted April 5, decision of the Court of Appeals reversed and ruling of
the trial court affirmed October 18, 1988

KRAUSE,
*Respondent on Review,*

*v.*

AMERICAN AEROLIGHTS, INC., et al,
*Petitioners on Review.*

(CC A8312-07630; CA A38663; SC S34806)

762 P2d 1011

Lloyd B. Ericsson, of Martin, Bischoff, Templeton, Ericsson & Langslet, Portland, argued the cause for petitioners on review. With him on the petition were Barbara J. Gazeley and Stephanie L. Striffler, Portland.

Jas J. Adams, of Acker, Underwood & Smith, Portland, argued the cause and filed a response to the petition for respondent on review.

Harvey M. Grossman, Los Angeles, California, and Ridgway K. Foley, Jr., of Schwabe, Williamson & Wyatt, Portland, filed a brief on behalf of *amici curiae* Product Liability Advisory Council, Inc., and Motor Vehicle Manufacturers Association of the United States, Inc.

Michael C. McClinton, of Clark, Lindauer, McClinton, Todd, Krueger & Fetherston, Salem, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander & McCann, Salem, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

JONES, J.

**JONES, J.**

Plaintiff seeks damages for injuries incurred July 4, 1983, in an accident in his XL ultralight, a device similar to a motorized hang glider. Plaintiff sued American Aerolights, Inc., the ultralight's manufacturer, and Sky-Ryders, Inc., the seller, alleging that defendants were strictly liable for placing a defectively designed, manufactured and tested ultralight on the market and that defendants failed to warn of the ultralight's dangerous and defective condition. Originally, plaintiff also claimed that defendants were negligent in designing, manufacturing and inspecting the ultralight, but he withdrew that negligence claim immediately before trial.

Plaintiff claimed that as a result of the alleged defect, the wing of the ultralight tore in flight, causing it to crash. The case was tried before a jury, which returned a special verdict finding that the ultralight was not defective, and judgment was entered for defendants. Plaintiff appealed, assigning as error the trial court's exclusion of evidence of a repair kit and service bulletins issued after the accident with respect to both plaintiff's single-occupant Eagle XL model and another similar model, the double-occupant "Two Place" ultralight. The Court of Appeals held the trial court erred in excluding this evidence and reversed and remanded the case for a new trial. *Krause v. American Aerolights,* 88 Or App 383, 745 P2d 796 (1987). We reverse the decision of the Court of Appeals and affirm the trial court ruling.

The sole issue is whether the trial court erred in excluding the evidence pertaining to the repair kit and service bulletins, which plaintiff claims demonstrates that after the accident the manufacturer attempted to strengthen the sail and wing of other ultralights by providing a kit to use in making the repairs and instructions how to prevent the type of tear involved in this case. The Court of Appeals held that OEC 407, which provides that evidence of subsequent remedial repairs is not admissible to prove "negligence or culpable conduct," does not apply in products liability cases based on strict liability. The Court of Appeals held that evidence of subsequent remedial repair measures is much more probative in strict liability cases than in negligence claims, and prejudice is less likely to occur in strict liability cases because fault or its absence is not material.

We disagree with the Court of Appeals' view that OEC 407[1] does not apply to strict liability cases. We are not persuaded by the contention that because the text of OEC 407 restricts evidence of subsequent remedial repairs to cases involving culpable conduct, it necessarily follows that OEC 407 is inapplicable because products liability cases based on strict liability do not involve any "culpability." Defendants may be liable for manufacturing a defective product even if not blameworthy in the sense of acting wilfully, wantonly or negligently, provided plaintiff proves their product defective and that it caused plaintiff's injury.

This court has treated liability for harm caused by a defective product as involving a type of "fault." *See Sandford v. Chevrolet Div. of General Motors,* 292 Or 590, 642 P2d 624 (1982); *Bacceleri v. Hyster,* 287 Or 3, 597 P2d 351 (1979). The difference between negligence and the fault at issue in a products liability case is not so significant as to call for a different interpretation of OEC 407.

There is no doubt that OEC 407 was adopted by the legislature in 1981 to apply to negligence cases. The legislature intentionally left unanswered the question whether OEC 407 applies to claims based on strict liability, leaving that issue to the courts.[2] When the legislature (and those who prepare proposed legislation) undertakes to enact public policy in an area, it is preferable that a policy dispute be decided one way or the other rather than "leave it to the courts." But since the ball has been punted to us, we will field it the best we can. We note that the legislature, in adopting the rule for negligence cases, rested the acceptance of the doctrine of exclusion on three grounds. Logically, if those three grounds are as relevant in strict liability cases as they would be in negligence cases, the

---

[1] OEC 407 provides:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This section does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

[2] When the author of this opinion, as a member of the Oregon Evidence Revision Commission, joined in the recommendation to leave this issue to the courts, he did not foresee the result of that choice.

underlying policy, even though debatable, should be continued. Symmetry, if not logic, should demand such a result.

We therefore examine the grounds for the exclusion of subsequent remedial repairs in negligence cases as set forth in the legislative commentary to OEC 407 to ascertain if they are as applicable to cases based on strict liability. The first policy referred to by the commentary is as follows:

> "[A] subsequent remedial measure is not in fact an admission, because such conduct is also consistent with injury by mere accident or by operation of contributory negligence. However, under a liberal theory of relevancy this ground alone would not support exclusion, as the inference of culpable conduct is still possible. * * *"

The evidence offered in this case did not in any way refer to the air crash in question. It did not admit anything about any condition existing on this particular ultralight. But one argument is that the subsequent repairs, if not an express admission, constitute some kind of implied admission that the product was defective. Viewed from the perspective of an alleged admission, we first ask what is the statement. OEC 801(4)(b) deals with evidentiary admissions. It provides: *"Admission by party-opponent.*[3] The *statement* is offered against a party * * *."* OEC 801(1) defines a "statement" as "[a]n oral or written assertion" or "[n]onverbal conduct of a person, if intended as an assertion." Here, admittedly there were no expressed admissions of fault, either oral or written, by defendant. Nor was there any conduct intended as an assertion. Any "admission" could only be viewed as an "admission by conduct," a concept that probably forms a basis for the common-law rule underlying OEC 407. But admissions by nonassertive conduct are expressly rejected by our evidence code, as follows:

> "Whether nonverbal conduct should be regarded as a 'statement' requires further consideration. Some nonverbal conduct, such as the act of pointing to identify a suspect in a lineup, is clearly the equivalent of a verbal assertion and

---

[3] The words "Admission by party-opponent" are italicized in the published Oregon Rules of Court (1988), and appear in the 1981 Butterworth CLE/OLI publication. However, these words constitute a title only and are not part of the text of the Oregon Evidence Code. The above words do not appear in the codification at chapter 40 of the Oregon Revised Statutes. Any relevant statement offered against a party-opponent is admissible without being an "admission."

should be regarded as a statement. Other nonverbal conduct, however, may be offered as evidence merely of a person's belief in the existence of a condition, from which belief the existence of the condition may be inferred. It can be argued that the conduct still asserts the existence of the condition, and is therefore a 'statement.' See Morgan, 'Hearsay Dangers and the Application of the Hearsay Concept,' in 62 Harv L Rev 177, 214, 217 (1948); and Finman, 'Implied Assertions as Hearsay: Some Criticisms of the Uniform Rules of Evidence,' in 14 Stan L Rev 682 (1962). The declarant's perception and narrations are also untested. Nevertheless, the Legislative Assembly is of the view that the risks that are posed are minimal in the absence of an intent to assert, and do not justify the loss of evidence on hearsay grounds." Kirkpatrick, Oregon Evidence, Commentary to OEC 801(1)(b) at 322 (1982).

The subsequent remedial measures in this case were not admissions in any form. The remedial measures demonstrate no "inference of culpable conduct" other than the manufacturer's knowledge that the product was defective, but the manufacturer's mental state is not in issue.

The best reason for admitting the proffered evidence is that it is circumstantial evidence of a dangerous defect in a similar product and therefore is relevant to prove that the product involved in this accident was defective. Under this court's liberal interpretation of relevancy, *see Byrd v. Lord Brothers Contractors, Inc.*, 256 Or 421, 473 P2d 1018 (1970), cited as an illustration in the legislative comment to OEC 401,[4] if not excluded under OEC 407 this evidence would otherwise be admissible. It is not an admission, but is relevant as inferring culpable conduct in manufacturing a dangerously defective product.

We now address the legislature's second reason for exclusion of evidence of subsequent remedial repairs, which we hold requires exclusion of plaintiff's proffered evidence. The second policy ground for exclusion of evidence under OEC 407 as set forth by the Oregon legislature in its commentary "is a social policy of encouraging people to take, or at least

[4] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

not discouraging them from taking, steps in furtherance of added safety." As noted by the legislative comment, "[t]his rule merely restates decisional law in Oregon." *Phipps v. Air King Manufacturing Corp.*, 263 Or 141, 501 P2d 790 (1972); *Rich v. Tite-Knot Pine Mill*, 245 Or 185, 421 P2d 370 (1966).

Would it not be foolhardy in this modern world for a manufacturer of a product, particularly a product as hazardous as a light aircraft, having been alerted by one or a series of accidents to the existence of a potentially dangerous defect, not to take steps to correct that defect irrespective of potential admission of such remedial acts in some existing or future litigation? Nevertheless, as we have repeatedly stated, this court does not set the legislative policy for this state, the legislature does. *See, e.g., Donaca v. Curry Co.*, 303 Or 30, 35-36, 734 P2d 1339 (1987); *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 553, 652 P2d 318 (1982). The legislature promoted a strong social policy to encourage people to make repairs after an accident, and was apparently concerned that if this type of post-accident repair is admitted persons might be dissuaded from taking the necessary steps to avoid future accidents. We think this is a weak basis for a rule,[5] but

---

[5] As Wright & Graham aptly observe:

"[T]he best explanation for the rule is not relevance but the public policy of encouraging people to take precautionary measures after an accident by assuring them that such steps cannot be used as evidence of past negligence. However, in view of the devastating criticisms that have been made of this rationale, it is difficult to see how anyone favoring the preservation of the rule could regard it as a sound justification. There is only skimpy evidence that tort defendants behave in the way that this argument supposes.[36] Many [modern writers and courts] are not aware of the rule, and those who were would surely regard it as a leaky shield in view of the many exceptions that would admit the evidence. Moreover, the fear of further tort liability or other sanctions provides a substantial incentive for defendants to make repairs even if this will increase the likelihood of their being found liable for past accidents. Finally, in cases where the only probative evidence of negligence is the taking of subsequent remedial measures, the rule of evidence undermines the policy of the law of torts by subsidizing the safety of others through a denial of compensation to the injured plaintiff.

---

"[36] Evidence of behavior

The lack of empirical support for the rule has often been noted. See, e.g., Advisers' Note, Me.R.Ev. 407; Schwartz, The Exclusionary Rule on Subsequent Repairs—A Rule in Need of Repair, 1972, 16 Tr.L.Guide 96, 104. A study for the Commission on Consumer Product Safety found that decisions on product liability had little effect on the design of products. See, Note, Evidence—California Supreme Court Holds Evidence of Subsequent Design Change Admissible to Prove Design

it is not for us to second-guess the legislative policy makers. Other courts have done so. Most state courts have held the equivalent of OEC 407 inapplicable to strict liability cases.[6] In spite of those decisions and the criticism of this second policy reason, we cannot say that no manufacturer will be deterred from implementing a subsequent remedial measure because of the possible evidentiary use of the measure against the manufacturer in a products liability claim.

Perhaps the best rationale for the application of the rule is that triers of fact, particularly juries, may overreact to evidence of subsequent remedial measures. The legislative comment concludes with a third reason to exclude such evidence: "[F]actors of undue prejudice, confusion of issues and misleading the jury still remain for consideration under Rule 403."[7] To infer fault, whether in negligence or strict liability, from such measures is to believe the fallacy that "because the world gets wiser as it gets older, therefore it was foolish before." *Hart v. Lancashire & Yorkshire Ry.*, 21 LTS (ns) 261,

---

Defect, 1975 U.Ill.L.F. 288, n.27."

23 Wright & Graham, Federal Practice and Procedure 93-94, § 5282 (other footnotes omitted).

[6] *See, e.g., Dura Corp. v. Harned,* 703 P2d 396, 411 (Alaska 1985); *Caterpillar Tractor Co. v. Beck,* 624 P2d 790 (Alaska 1981); *Ault v. Int'l Harvester Co.,* 13 Cal 3d 113, 528 P2d 1148, 117 Cal Rptr 812 (1975); *Jeep Corp. v. Murray,* 101 Nev 640, 708 P2d 297, 302 (1985); *Frank v. Volkswagenwerk of Wolfsburg Germany,* 432 NYS2d 787, 105 Misc 2d 760 (1980); *Klug v. Keller Industries, Inc.,* 328 NW2d 847, 852 (SD 1982); *D.L. by Friederichs v. Huebner,* 110 Wis 2d 581, 329 NW2d 890, 903 (1983); *Chart v. General Motors Corp.,* 80 Wis 2d 91, 258 NW2d 680 (1977); *Caldwell v. Yamaha Motor Co., Ltd.,* 648 P2d 519 (Wyo 1982); *see also Unterburger v. Snow Co., Inc.,* 630 F2d 599 (8th Cir 1980); *Farner v. Paccar, Inc.,* 562 F2d 518 (8th Cir 1977).

In contrast, the federal courts generally have held FRE 407 applicable to strict liability cases. *See, e.g., Cann v. Ford Motor Co.,* 658 F2d 54, 60 (2d Cir 1981); *Josephs v. Harris Corp.,* 677 F2d 985, 991 (3d Cir 1982); *Knight v. Otis Elevator Co.,* 596 F2d 84, 91 (3d Cir 1979); *Werner v. Upjohn Co., Inc.,* 628 F2d 848, 856 (4th Cir 1980); *Muzyka v. Remington Arms Co., Inc.,* 774 F2d 1309, 1310 n 1 (5th Cir 1985); *Cook v. McDonough Power Equipment, Inc.,* 720 F2d 829, 831 (5th Cir 1983); *Grenada Steel Industries, Inc. v. Alabama Oxygen Co., Inc.,* 695 F2d 883 (5th Cir 1983); *Hall v. American S.S. Co.,* 688 F2d 1062, 1067 (6th Cir 1982); *Bauman v. Volkswagenwerk Aktiengesellschaft,* 621 F2d 230 (6th Cir 1980); *Oberst v. International Harvester Co., Inc.,* 640 F2d 863, 866 (7th Cir 1980); *Gauthier v. AMF, Inc.,* 788 F2d 634, 637 (9th Cir 1986).

[7] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

263 (Ex 1869); see discussion and references in 2 Wigmore, Evidence in Trials at Common Law 174-75, § 283 (Chadbourn ed 1979).

As we mentioned, the subsequent repair rule evolved from the hearsay rules governing admissions by conduct of a party. Conduct of a person was admitted to prove a state of mind even though the actor had no intention of making a statement. As the writers of McCormick, Evidence 803 (3d ed 1984), set forth:

> " 'The wicked flee when no man pursueth.' Many acts of a defendant after the crime seeking to escape the toils of the law are uncritically received as admissions by conduct, constituting circumstantial evidence of consciousness of guilt and hence of the fact of guilt itself. * * *"

It is this possibility—that the jury may infer a bad state of mind from this conduct—that contributes to the concern that such evidence is unfair and unduly prejudicial.

But excluding evidence because it is unfair leads us back into the weighing process of probative value versus prejudicial effect under OEC 403 and thus clouds the policy reason for OEC 407. While fairness may be taken into account in applying OEC 403, interpretation of OEC 407 must rest on the questioned social policy of "encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." This transforms the rationale for the rule from one of relevance into one of quasi-privilege. *See* 23 Wright & Graham, Federal Practice and Procedure 98, 109, § 5282, 5284.

In other words, the legislature has stated, irrespective of the probative value of such evidence on the issue of fault, such evidence is protected by the legislative privilege not to be revealed to the trier of fact for reasons of policy. The lawmakers' judgment that juries are not to hear this type of evidence is a policy judgment that need not be backed up by empirical studies. The legislature is free to act on intuition. *See City of Portland v. Tidyman,* 306 Or 174, 189, 759 P2d 242 (1988). We noted the paucity of empirical studies to support the rule as to negligence claims and we find no empirical studies contrasting the exclusionary rule of OEC 407 in strict liability with negligence claims to persuade us to abandon the rule for one claim, but retain it for the other. We fail to

comprehend why under this asserted legislative policy there would be any good reason to allow the evidence in a products liability case, but exclude it in a negligence case. The analysis is not fundamentally different whether the basis of liability is the defendant's negligence or the defendant's product's defectiveness.

## CONCLUSION

We therefore end where we started, that the rationale underlying OEC 407 is a legislative rationale, not necessarily a logical nor indeed a realistic rationale. But we do not change legislative policy. We perceive no compelling reason to distinguish between strict liability claims and negligence claims. We therefore apply the exclusionary rule of OEC 407 to strict liability claims as well as to negligence claims. If the legislature does not like this decision, it knows how to correct it. Several states have enacted statutes removing products liability claims from the subsequent remedial repair rule.[8]

The decision of the Court of Appeals is reversed, and the ruling of the trial court is affirmed.

---

[8] *See* Colo R Ev 407 ("The phrase 'culpable conduct' is not deemed to include proof of liability in a 'strict liability' case based on defect, where the subsequent measures are properly admitted as evidence of the original defect."); *see also* Haw Ev R 407; Tex R Ev 407(a).