C. L. SNIPES, as father of Clinton Larry Snipes, and Clinton Larry Snipes, Appellants,

v.

James T. MARCH, Appellee.

No. 214.

Supreme Court of Alaska.

Feb. 21, 1963.

John M. Savage, Irvine, Clark & Savage, Anchorage, for appellants.

Eugene F. Wiles, Plummer, Delaney & Wiles, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

This is an action for personal injuries sustained in an automobile collision. The plaintiff-appellant, Clinton Snipes, was a passenger in a car driven by defendant-appellee, James March, which collided head-on with a car driven by Michael Bell. A jury found that defendant was negligent, and awarded plaintiff approximately $20,000 damages. The defendant moved for judgment notwithstanding the verdict, and the court granted the motion on the ground that the jury's verdict was not supported by evidence establishing defendant's negligence. Plaintiff has appealed, claiming that the

court was in error and that the verdict should be reinstated.

The defendant, with plaintiff as a passenger, was driving along a highway, in his own lane of traffic, at a speed of approximately 30 to 35 miles an hour. A car driven by Michael Bell was approaching from the opposite direction at a speed of about 45 miles an hour. When the two vehicles were about one-half mile apart Bell pulled left into defendant's traffic lane in order to avoid frost heaves in the road; and then as a "prank", continued in that lane heading directly for defendant's car. Defendant applied his brakes hard, turned left and skidded across the center of the highway into the oncoming traffic lane. At about the same time Bell turned back into his own lane of traffic and the two cars collided, resulting in plaintiff's injuries.

The defendant and Bell attended the same high school and were acquainted. Each drove a car to school, and in the mornings they frequently met and passed each other in the general vicinity where the collision took place. Occasionally they would greet each other by honking their horns or by briefly swerving their cars toward each other. Within a month prior to the accident they had discussed playing the game of "chicken" or "switch", which required their cars to pass each other on the wrong side of the road.

Bell denied that he was trying to play chicken when he headed his car toward defendant's car on the wrong side of the road, and defendant had no recollection of having planned to put the game into operation the day of the accident. However, plaintiff testified that while he was in the hospital with defendant, the latter said that maybe the accident happened because he and Bell were thinking about switching traffic lanes; that he pulled over into the left hand lane when he saw Bell coming toward him; and then Bell pulled back into his own lane because he saw a car coming toward him which had been following behind defendant's car.

In ruling on defendant's motion for judgment notwithstanding the verdict, the judge said that the statement attributed to defendant as to why the cars might have collided, together with the admitted prior conversation between defendant and Bell as to their playing the game of chicken, was sufficient to create an inference of negligence favorable to plaintiff. The judge said that if the collision had resulted from an effort by both drivers to pass on the wrong side of the road, plaintiff would be entitled to a judgment. But the judge went on to hold that since the evidence showed that defendant had braked his vehicle and veered to the left, and had almost come to a stop at the point of collision, he had not attempted to pass Bell on the wrong side of the road but had done nothing more than attempt to avoid an imminent collision caused by Bell's negligence. Employing the rule of sudden emergency[1] the judge held as a matter of law that defendant had been faced with an emergency not created by his own negligence, and therefore was not negligent in turning his car left in an endeavor to avoid a collision with Bell's car approaching on the wrong side of the road.

■ We believe that the judge was mistaken in setting aside the jury's verdict. He would have been justified in doing that only if the evidence was such that fair minded men, in the exercise of reasonable judgment, could not differ on the question of defendant's negligence, but could only come to the conclusion that he was not negligent.[2]

■ In our view of the evidence there was room for diversity of opinion among

1. The rule of sudden emergency has been stated as follows: " * * * the driver of a motor vehicle is not negligent when, faced with an emergency not created by his own negligence, he turns to his left in an endeavor to avoid a collision with a vehicle approaching on its wrong side of the road * * *." Ruff v. Fruit Delivery Co., 22 Wash.2d 708, 157 P.2d 730, 737 (1945).

2. See 2B Barron & Holtzoff, Federal Practice and Procedure § 1075, at 377 (Rules ed. 1961).

reasonable men as to whether defendant had exercised proper care. The visibility was good, and defendant had an unobstructed view of Bell's car coming toward him on the wrong side of the road when the two cars were approximately one-half mile apart. A man named Fruick was driving three or four car lengths behind defendant. He noticed defendant's brake lights go on and off an interval of time prior to the moment that defendant braked hard and swerved to the left. From two to five seconds after defendant turned left, Fruick drove off the road to the right into a ditch about three feet deep. His car was not damaged and he was uninjured. He testified that there was an interval of five or ten seconds from the time that defendant started to skid left across the highway until defendant's and Bell's cars collided.

The jury had been instructed that application of the emergency doctrine required that defendant be confronted with a perilous situation "suddenly and unexpectedly". The jury might reasonably have concluded from the evidence that defendant had sufficient opportunity for deliberation—enough time for weighing alternative courses of action—so that the situation which confronted him was not so sudden and unexpected as to constitute an emergency.

The jury was also instructed that although one confronted with an emergency through no fault of his own is not required to use the same judgment and prudence of calmer and more deliberate moments, yet he must exercise the care that an ordinarily prudent person would exercise in the same situation. From all of the circumstances of the case, the jury reasonably could have concluded that a person of ordinary prudence in this situation would not have applied his brakes, turned left, and almost come to a stop in the left hand lane of traffic; but would have taken an alternative course of action, such as going off the road to the right as Fruick did, or possibly going off the road into the ditch on the left hand side. At the very least, reasonable minds could differ as to whether defendant did what was reasonable under the circumstances.

The jury was also aware of the discussion defendant and Bell had had regarding the game of chicken, and of defendant's statement, as plaintiff had related it, that the accident might have happened because defendant and Bell were thinking about switching traffic lanes. It would not be unreasonable for the jury to have believed that defendant's preoccupation with the chicken game as he saw Bell coming toward him caused him to delay taking evasive action to avoid collision; and that an ordinarily prudent person, not contemplating playing the game of chicken, would have acted sooner and differently and could have avoided the collision.

 We find that a jury question was presented in this case. The judgment notwithstanding the verdict is reversed. We may not order reinstatement of the verdict because there is still pending in the superior court defendant's motion for a new trial which had been prayed for in the alternative with his motion for judgment.[3] The trial judge should have also ruled on the motion for a new trial, so that piecemeal disposition of this litigation might be avoided.[4] Since he did not, we must remand the case with directions to the superior court to rule upon defendant's motion for a new trial, and to enter judgment for plaintiff upon the verdict if the motion is denied.

Reversed and remanded.

3. Civ.R. 50(b) provides that a motion for a new trial may be joined with a motion for judgment notwithstanding the verdict, or a new trial may be prayed for in the alternative.

4. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940); 2B Barron & Holtzoff, Federal Practice and Procedure § 1082 (Rules ed. 1961).