**DOWLING SUPPLY AND EQUIPMENT, INC., a corporation, Appellant,**

v.

**CITY OF ANCHORAGE, a municipal corporation, Appellee.**

No. 1450.

Supreme Court of Alaska.

Nov. 22, 1971.

James K. Tallman, Anchorage, for appellant.

Harold W. Tobey, City Atty., L. Eugene Williams, Asst. City Atty., Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

ERWIN, Justice.

This is an appeal from an order of the superior court affirming the action of the district court in setting aside a jury verdict favorable to appellant, in ordering a new trial as to both appellee's claim and appellant's counterclaim, and in denying appellant's motion that the new trial on the counterclaim be limited to the issue of damages.[1] We affirm.

On June 12, 1969, the City of Anchorage filed suit against appellant, Dowling Supply & Equipment, Inc., a new and used car retailer, for delinquent telephone bills amounting to $291.84. Dowling Supply denied the debt and crossclaimed for $3,000, asserting a breach of contract in the removal of the telephone and resultant damages in loss of business.

Trial was held on October 24, 1969, the evidence consisting entirely of the testimony of two witnesses, Dorris M. Patzold and Alice P. Tallman. Mrs. Patzold, a service representative of the City, testified from business records that none of the long distance charges to the Dowling Supply phone had been paid.[2] On cross-examination she admitted that Dowling Supply had consistently disputed the long distance charges, and that the charges had been temporarily removed from the July, 1968 billing, while their validity was investigated. Mrs. Tallman, secretary-treasurer of Dowling Supply, acknowledged receipt of the billings, but testified that neither she nor John T. Riley, then president of the corporation, had any knowledge of the calls, and that she had consistently so notified the utility personnel.

The telephone was temporarily disconnected in January, 1969, and the number released on February 3, 1969. Mrs. Tallman testified that as a result the gross receipts of the corporation declined from over $38,000 in 1968 to less than $5,000 in 1969, that the decline was due to the inability to place a telephone number in newspaper advertising, that there were no other serious business problems, and that the total injury to the business exceeded $3,000.[3]

A jury verdict in the amount of $2,416 was returned on the counterclaim.[4] However, the jurors apparently failed to understand the procedure in filling out the mimeographed verdict form. Neither the word "Plaintiff" nor the word "Defendant" had been interlineated in the portion of the form relating to the City's claim or in the portion concerned with Dowling Supply's counterclaim.

Immediately after the verdict was returned, the City renewed a motion to dismiss the counterclaim, and on November 6, 1969, the City moved for a judgment n. o. v. or, in the alternative, for a new trial. On June 5, 1970, District Judge Tyner denied the first two motions, but granted the motion for a new trial, stating:

> As to [the City's] claim, the jury failed to render a verdict, and [the City] is therefore entitled to a new trial. There

1. The second trial resulted in a jury verdict and judgment adverse to appellant as to both the claim and the counterclaim.

2. The flat rate charges and most of the directory charges were paid.

3. The jurisdiction of the district court was then limited to claims not in excess of $3,000. AS 22.15.030.

4. The court had instructed the jury in part that:
 [T]he general rule of law is that a municipality supplying a public utility service may discontinue service for nonpayment of the bill. However, there is an exception to the rule where there is

a bona fide dispute, either as to the consumer's liability, or as to the correctness of the bill rendered, so that when there is such a dispute a municipality can not arbitrarily shut off a consumer's supply for refusal to pay the disputed bill. Therefore, where a municipality discontinues its service for nonpayment of a disputed amount or liability, it does so at its peril, and if in the wrong, is liable for such damages as are the proximate result of its wrongful act.
 Surprisingly, the court gave no instruction as to liability for calls made by third parties on a person's telephone without the latter's knowledge or consent.

is no basis in the evidence for the amount of the verdict rendered on the counterclaim, and for this reason, [the City] is entitled to a new trial.

On June 9, 1970, Dowling Supply petitioned the superior court for review of the new trial order; the petition was denied. On August 26, 1970, Dowling Supply moved in the district court to limit the new trial on the counterclaim to the issue of damages; this motion was also denied. At the second trial, held on October 1, 1970, the jury rendered verdicts in favor of the City on both its claim and Dowling Supply's counterclaim. Dowling Supply then appealed to the superior court which affirmed the action of the district court.

The sole issue presented by this appeal is whether the district court erred in granting a new trial as to both the City's claim and Dowling Supply's counterclaim, and in not limiting trial on the counterclaim to the issue of damages.

The grant or denial of a Civil Rule 59 new trial motion rests in the sound discretion of the trial judge, reversible on appeal only "in the most exceptional circumstances and to prevent a miscarriage of justice." Ahlstrom v. Cummings, 388 P.2d 261, 262 (Alaska 1964). The standard of review applied by this court is well settled:

In order for us to hold that the trial judge has abused his discretion, we would have to be left with the definite and firm conviction on the whole record that the judge had made a mistake * * *.

National Bank of Alaska v. McHugh, 416 P.2d 239, 244 (Alaska 1966).[5]

 Applying this test, we are unable to conclude that the granting of a new trial was an abuse of discretion. As to the counterclaim, we agree with the court below that there was no evidentiary basis for the jury's verdict of $2,416. Normally, where the plaintiff has shown actual loss of business profits during a period as a result of defendant's breach of contract, he should not be denied recovery merely because the exact amount of damages cannot be readily ascertained. The rule against recovery of uncertain damages is therefore generally directed against uncertainty with respect to the cause of rather than the extent of damages. However, some competent evidence as to the amount of damages must still be introduced.[6] The only evidence concerning damages introduced below consisted of testimony by Mrs. Tallman that a sharp decrease in gross receipts occurred after removal of the telephone and that the total "business injury" exceeded $3,000. No indication of profit margin was given; no business records were introduced. We hold that the trial court did not err in finding the foregoing testimony

---

5. *See also*, Maxwell v. Olsen, 468 P.2d 48, 49 (Alaska 1970); Hash v. Hogan, 453 P.2d 468, 471–472 (Alaska 1969); West v. Adm'rx of Estate of Nershak, 440 P.2d 119, 121 (Alaska 1968); Bertram v. Harris, 423 P.2d 909, 915 (Alaska 1967).

Dowling Supply places misguided reliance on Snipes v. March, 378 P.2d 827 (Alaska 1963), as establishing a more stringent test on appeal. The trial judge in *Snipes* had granted a motion for judgment notwithstanding the verdict which is to be sharply distinguished from a motion for a new trial. The former raises the legal sufficiency of the evidence; the latter may call upon the judge to weigh the evidence, and is therefore addressed to his sound discretion.

Dowling Supply also contends that the grant of a new trial violated its constitutional right to jury trial. For this original proposition two inapposite cases reviewing the propriety of directed verdicts are cited. We find the challenge to this long-established power of the trial court insufficiently briefed, and decline to consider it. Sup.Ct.R. 11(a) (8).

6. 11 Williston on Contracts § 1345 at 231–240 (3d ed. 1968); 5 Corbin on Contracts §§ 1021–1022 at 127–147 (1964); Pacific Northwest Bell Tel. Co. v. Rivers, 88 Idaho 240, 398 P.2d 63 (1965); Gould v. Mountain States Tel. & Tel. Co., 6 Utah 2d 187, 309 P.2d 802 (1957).

insufficient to support an award of compensatory damages.[7]

■ ■ A more troublesome issue is presented by the grant of a new trial on the City's claim on the ground that the jury failed to render a verdict. While under normal circumstances we would be strongly inclined toward the view that the verdict was properly returned, we find ourselves in doubt as to exactly what transpired below. The award of $2,416 in damages on the counterclaim where the only evidence was for a sum in excess of $3,000 suggests a compromise verdict on the part of the jury. One explanation of this award is that the jury deducted from the counterclaim some amount owed to the City in arriving at the final figure. Under these peculiar circumstances, we find no abuse of discretion in the grant of a new trial on the City's claim.[8]

■ We also find no error in the refusal of the district court to limit the new trial of the counterclaim to the issue of damages. Because of the possibility of a compromise verdict, we are unable to say that the jury clearly separated the issues of liability and damages so that a limited retrial would have been permissible.[9] The power to grant restricted retrial is discretionary;[10] no abuse of that power occurred below.

The judgment of the superior court affirming the action of the district court is affirmed.

---

7. On the basis of the evidence presented, the trial court would have been justified in granting a judgment notwithstanding the verdict on the counterclaim.

8. Undoubtedly, this ambiguity would have been avoided by clear instructions from the trial court on the proper method of filling out the verdict form. Counsel should have been instrumental in this regard.

9. Lofgren v. Western Wash. Corp. of Seventh Day Adventists, 65 Wash.2d 144, 396 P.2d 139, 144 (1964); Phipps v. Hulit, 128 N.J.L. 74, 24 A.2d 506, 507–

508 (1942); Annot., 85 A.L.R.2d 9, 26 (1962).

10. Cf. 6A Moore, Federal Practice ¶ 59.06 at 3760–61 (2nd ed. 1966). Pennington v. Snow, 471 P.2d 370 (Alaska 1970), and City of Fairbanks v. Nesbett, 432 P.2d 607 (Alaska 1967), cited by Dowling Supply, are cases in which this court remanded only as to the issue of damages. They stand for no more than the proposition that this court has the power to order restricted new trial where liability is clear but the extent of damages is in controversy.