583 P.2d 305 (1978)
James H. ROBERTS and Rita Roberts, Plaintiffs-Appellants,
v.
David Wayland MAY, and Daniel R. Peterson, Defendants, and
Nissan Motor Corporation in U. S. A., a California Corporation, Defendant-Appellee.
No. 77-714.
Colorado Court of Appeals, Div. III.
May 11, 1978.
Rehearing Denied June 8, 1978.
Certiorari Denied August 28, 1978.
*306 Williams, Trine & Greenstein, P. C., Morris W. Sandstead, Jr., William A. Trine, Boulder, for plaintiffs-appellants.
Blunk, Johnson & Allspach, Donald G. Peterson, Forrest S. Blunk, Denver, for defendant-appellee.
*307 PIERCE, Judge.
Plaintiff, Rita Roberts, brought this products liability action against defendant, Nissan Motor Corporation, in connection with injuries which she suffered as a passenger in a car manufactured by defendant. The trial court granted defendant's motion for summary judgment, and plaintiff appeals. We reverse.
Plaintiff and her husband were injured when a 1973 Datsun which the husband was driving collided with the rear of another vehicle. The Datsun was equipped with lap seat belts as well as shoulder restraints, but at the time of the accident plaintiff was wearing only the lap belt. She was thrown forward and her face struck the dashboard. The orbital rims of both eyes, her cheekbones, nose, and a number of other facial bones were fractured. Plaintiff and her husband brought this action against a number of defendants, including Nissan, on several theories, but only plaintiff's strict liability claim against Nissan survived early pretrial motions. That claim is the sole object of this appeal.
At the hearing on Nissan's motion for summary judgment, plaintiff introduced the depositions and reports of a number of experts. Essentially, these experts testified that the Datsun was defectively designed since 1) the lip below the glove compartment protruded enough so that a person of average height wearing only a lap belt would hit his face on it during a front end collision; and 2) the surface of this lip was so hard, and the angle of protrusion so acute, that upon impact, the bones of the face would normally fracture before the dashboard structure would yield.
Plaintiff's experts conceded that the automobile met all of the Department of Transportation's regulations for the 1973 manufacturing year, as well as the 1973 Society of Automotive Engineers (S.A.E.) recommendations. Specifically, the dashboard met the federal requirement that it yield to impacts of 80 g.'s or greatera figure which, according to S.A.E. test results, is the maximum force a human skull can withstand. Tests showed that the Datsun's dashboard would yield to forces in the 61-70 g. range. However, plaintiff's experts also pointed out that the S.A.E. tests indicated that a number of facial bones would fracture at forces as low as 40 g.'s, although these test results were not incorporated into the federal standards.
At the close of the hearing, at which defendant's expert also testified that the automobile met all 1973 federal design standards, the trial court granted defendant's motion for summary judgment.

I.
Our Supreme Court has adopted the doctrine of strict liability as stated in Restatement (Second) of Torts § 402(a). Hiigel v. General Motors Corp., Colo., 544 P.2d 983 (1975). Strict liability is applicable to an otherwise properly manufactured product if its design renders it unreasonably dangerous. Pust v. Union Supply Co., Colo.App., 561 P.2d 355 (1976); Bradford v. Bendix-Westinghouse, 33 Colo.App. 99, 517 P.2d 406 (1973). The initial question which we must face here is whether § 402(a) liability attaches to an automobile design defect which, though not contributing to the collision itself, may have enhanced the injuries sustained. We hold that it does.
Courts of other states are divided over this so-called "second collision" or "crashworthiness" issue, though a commanding majority have held that such claims as this are actionable.[1] We now adopt the majority position, which is based on the pragmatic observation that collisions and accidents are natural, foreseeable consequences of automobile use:
"No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and *308 the resulting injury, usually caused by the so-called `second collision' of the passenger with the interior part of the automobile, all are foreseeable. . . . The sole function of an automobile is not just to provide a means of transportation, it is to provide a means of safe transportation or as safe as is reasonably possible under the present state of the art." Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968).
Thus, manufacturers will not be insulated from liability by arguing that the initial collision was, as a matter of law, an unforeseeable intervening cause of the enhanced injuries.
The second collision doctrine, however, does not end the inquiry. Manufacturers are not required to produce automobiles with the "strength and crash-damage resistance features of an M-2 Army tank." Melia v. Ford Motor Co., 534 F.2d 795 (8th Cir. 1976) (Bright, J., dissenting). The critical question is whether, under all of the surrounding circumstances, a manufacturer has created an unreasonable risk of increasing the harm in the event of the statistically inevitable collision. The principal issue here is whether the court erred in taking that question away from the jury by granting defendant's motion for summary judgment. We hold that it did.
Defendant's position is that since it met all of the 1973 Department of Transportation's standards for manufacture and design, its product was design defect free as a matter of law. We disagree. By the very terms of the Act under which those standards were promulgated, compliance "does not exempt any person from any liability under common law." 15 U.S.C. § 1397(c) (1970). Thus, the standards are statutory minima, and are not conclusive on the question of a manufacturer's liability.[2]See Buccery v. General Motors Corp., 60 Cal.App.3d 533, 132 Cal.Rptr. 605 (1976).
Here, plaintiff's experts raised a factual question about the reasonableness of defendant's design strategies. This is not a case like Bruce v. Martin-Marietta Corp., 544 F.2d 442 (10th Cir. 1976), where defendant made an uncontradicted showing that the claimed defect could not have been corrected within the then existing state of the art. On the contrary, one of plaintiff's experts testified that he knew of several 1973 models whose dashboards were significantly less dangerous in terms of face-damaging protrusions than the automobile in question here. Under these circumstances, the drastic remedy of summary judgment was improper, and the issue of whether, under the 1973 state of the art, the design of the car unreasonably increased the risks of injury by collision should have been presented to the jury.
Because we reverse the trial court's summary judgment, we will address two issues which are likely to appear at trial.

II.
Defendant moved to amend its answer to add the affirmative defenses of misuse and unreasonable use with knowledge of the product's dangers. See Hiigel v. General Motors Corp., supra; Kinard v. Coats Co., 37 Colo.App. 555, 553 P.2d 835 (1976). Plaintiff opposed this amendment, arguing that these defenses were unavailable as a matter of law. We disagree.
*309 The crucial question under the misuse defense is whether "misuse by the injured party [was] not reasonably anticipated by the manufacturer . . .." Kinard v. Coats, supra. Here, assuming that plaintiff's failure to wear the shoulder restraint was a "misuse," the question of whether defendant should have foreseen that misuse is a question for the trier of fact. See Hilzer v. MacDonald, 169 Colo. 230, 454 P.2d 928 (1969). Similarly, assuming plaintiff was aware of the risk she was running by using only the lap belt, the question of whether her voluntary choice in accepting that risk was unreasonable is also a question which should be left to the jury. See 2 F. Harper & F. James, Law of Torts, § 28.15 (1956).

III.
By a motion in limine, defendant sought to prevent plaintiff from introducing any evidence of changes in design and manufacture which occurred after February 11, 1973the date of the accident. In support of its motion, defendant cites the well known rule that subsequent repairs are generally inadmissible to prove negligence. Diamond Rubber Co. v. Harryman, 41 Colo. 415, 92 P. 922 (1907); Barnes v. Safeway Stores, Inc., 30 Colo.App. 281, 493 P.2d 687 (1971). However, this negligence principle is inapplicable in a products liability context. Good v. A. B. Chance Co., Colo.App., 565 P.2d 217 (1977). This is so because, where an action is based on an alleged design defect, one important question is the existence of feasible alternatives. See Pust v. Union Supply Co., supra. Since a post-accident design change may bear directly on this issue, evidence of such a change may be admitted, the policy of encouraging repairs and improvements notwithstanding.[3]See Ault v. International Harvester Co., 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974).
The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
SMITH and KELLY, JJ., concur.
NOTES
[1] Of the 32 jurisdictions deciding the question, only three still adhere to the position that automobile defects not contributing to the collision are not actionable, and no court has adopted this minority approach since 1969. Appendices A and B, Huff v. White Motor Corp., 565 F.2d 104 (7th Cir. 1977).
[2] Colo.Sess.Laws 1977, ch. 199, § 13-21-403(1) at 820, provides that:

"In any product liability action, it shall be rebuttably presumed that the product which caused the injury, death, or property damage was not defective and that the manufacturer or seller thereof was not negligent if the product:
"a) Prior to sale by the manufacturer, conformed to the state of the art, as distinguished from industry standards, applicable to such product in existence at the time of sale; or
"b) Complied with, at the time of sale by the manufacturer, any applicable code, standard, or regulation adopted or promulgated by the United States or by the state, or by any agency of the United States or of this state."
However, the cause of action here accrued before this statute's effective date. See Colo. Sess.Laws 1977, ch. 199, § 13-21-401, et seq., at 820 (Editor's Note).
[3] Colo.Sess.Laws 1977, ch. 199, § 13-21-404 at 821, provides that:

"In any product liability action, evidence of any scientific advancements, in technical or other knowledge or techniques, or in design, theory or philosophy, or in manufacturing or testing knowledge, techniques, or processes, or in labeling, warnings of risks or hazards, or instructions for the use of such product, where such advancements were discovered subsequent to the time the product in issue was sold by the manufacturer, shall not be admissible for any purpose other than to show a duty to warn."
This section, too, did not become effective until after the cause of action involved here arose.