Christopher M. SNOWDEN, a minor, by and through his Natural Guardian and Next Friend, Teresa A. (Snowden) VICTOR; and United States of America, Plaintiffs,

v.

CONNAUGHT LABORATORIES, INC., a Delaware Corporation; and Connaught Laboratories, Inc., a Canadian Corporation, Defendants.

Civ. A. No. 89–1341–T.

United States District Court, D. Kansas.

June 6, 1991.

Andrew W. Hutton, Michaud, Hutton &
Bradshaw, Wichita, Kan., for Christopher

M. Snowden and Teresa A. (Snowden) Victor.

Ted Warshafsky, Warshafsky, Rotter, Tarnoff, Gesler, Reindhardt & Bloch, S.C., Milwaukee, Wis., for U.S.

Jay B. White, Pete Silva, Jr., James W. Connor, Jr., Mike Barkley, Barkley, Rodolf, Silva, McCarthy & Rodolf, Tulsa, Okl., Thomas J. Lasater, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for Connaught Laboratories, Ltd.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the objection and appeal of the magistrate's order of April 26, 1991 filed by defendants Connaught Laboratories, Inc. and Connaught Laboratories, Ltd. Doc. 146. A motion to stay the magistrate's order (Doc. 145) has been referred to the magistrate in accordance with D.Kan. Rule 604(d). The motion to stay has been granted by the magistrate. Doc. 148. The court would note that since a protective order has not been entered, the discovery ordered by the magistrate could not proceed at this time even in the absence of a stay. Plaintiffs filed a response to the defendants' motion to stay, *see* Doc. 147, but have not filed a response to the defendants' appeal of the magistrate's order. This is not the first time counsel for the plaintiff has failed to file a responsive pleading to an appeal of the magistrate's order. The court strongly urges plaintiffs' counsel to file responsive pleadings to all future motions before this court. The court retains the discretion to grant motions as uncontested if the plaintiffs fail to file responsive pleadings. *See* D.Kan. Rule 206(g).

Plaintiff Christopher Snowden was inoculated with DPT (Diphtheria, Pertussis and Tetanus) vaccine on February 10, 1984 at the Bassett Army Clinic, Fort Wainwright, Alaska. Plaintiffs allege that Christopher suffered injuries following his inoculation with the DPT vaccine which allegedly was manufactured by defendant Connaught Laboratories, Inc. (CLI). CLI is a wholly owned subsidiary of Connaught Laboratories, Ltd. (CLL). Plaintiffs contend that the pertussis component of the DPT vaccine caused the harm to Christopher. Plaintiff brings claims based on strict liability, negligent design, breach of express and implied warranties, and failure to provide proper warnings.

The pertussis component of CLI's DPT vaccine is a whole-cell vaccine, meaning it includes whole, killed pertussis cells. Apparently, all pertussis vaccines available for inoculation of children in the United States in 1984 were of the whole-cell type. Defendants have in the past and are presently conducting research into a less-than-whole-cell ("acellular") pertussis vaccine. From 1980 to 1982, CLI conducted research which proved to be unsuccessful. Defendants state that they have provided plaintiffs' counsel with research materials concerning this research.

CLI again began research in 1986 in an attempt to develop an acellular pertussis vaccine. In 1987, CLI obtained the rights from Biken, a Japanese company, to use their acellular pertussis vaccine. CLI intends to use the Biken vaccine in combination with CLI's own diphtheria and tetanus components to produce a new DPT vaccine for inoculation of children of at least 18 months of age. Clinical testing of this new vaccine is apparently underway; CLI has not obtained a license from the Food and Drug Administration to market this new vaccine.

In their motion to compel, plaintiffs sought production of: (1) all documents dated up to and including the current date regarding both defendants' research into the development of an acellular pertussis vaccine; and (2) all documents dated up to and including the current date regarding both defendants' research into the development of the Biken antigen or vaccine. Motion to compel, Doc. 66. Defendants objected and moved for a protective order, arguing that the research constituted trade secrets, and further, that they were bound by a confidentiality agreement with Biken which precluded them from disclosing any information regarding the Biken secret formula. Doc. 87, 89.

In his order of April 26, 1991 (Doc. 137), the magistrate ruled on the plaintiffs' motion to compel production of documents and defendants' motion for protective order. The magistrate granted both motions in part, compelling the production of certain documents within the scope of plaintiffs' request, subject to a protective order to be drafted by counsel which would prohibit further dissemination of the produced records.

In his order, the magistrate discussed the plaintiffs' arguments for disclosure of these matters. Plaintiffs had contended that the documents involving acellular and Biken research were vital to their ability to demonstrate the feasibility of a safer alternative to the whole-cell vaccine. Plaintiffs requested research from the broad time frame to determine not only if, but when defendants had the technological capability to produce an acellular vaccine. Plaintiffs contended that defendants had the capability of producing a safer vaccine prior to 1984 but declined to do so because of cost factors. Plaintiffs contended that the current technology to create an acellular vaccine was available to defendants in the 1940s, 1950s and 1960s. Plaintiffs contended that research should be produced from both CLI and CLL because they believe CLL controlled the research funds for both companies.

The defendants had argued that the research material was not relevant to a determination of the feasibility of producing a safer vaccine in 1984. The defendants argued that the FDA had not licensed any acellular vaccines, making such a vaccine an unfeasible alternative. Regarding the Biken vaccine, defendants argued that they were operating under a confidentiality agreement with the Japanese manufacturer and that they could not disclose any information they have concerning the Biken secret formula or production process without violating this agreement. The defendants also argued that its research as well as the Biken formula constitute highly confidential trade secret information, that disclosure of this information to the highly competitive pharmaceutical market would be extremely damaging, and that the harm to defendants outweighed the plaintiffs' need.

The magistrate ruled that the material sought by plaintiffs met the broad definition of relevancy for discovery purposes. The magistrate ruled that the plaintiffs should be allowed to discover whether the defendants were capable of producing a safer product during the period in question. The magistrate ruled, however, that defendants should not be required to produce documents or records which would require them to violate their contract with Biken or to disclose information about the Biken vaccine that they do not possess. The magistrate then ordered the parties to draft a protective order to restrict disclosure and dissemination of the discovery materials.

■ The standard of review of a magistrate's order is set forth in 28 U.S.C. § 636. As to nondispositive pretrial matters, the district court reviews the magistrate's order under a "clearly erroneous or contrary to law" standard of review. *Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1461–62 (10th Cir.1988) (citing 28 U.S.C. § 636(b)(1)(A)). The clearly erroneous standard requires that the court affirm the decision of the magistrate unless "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 1464 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Because a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will overrule the magistrate's determination only if this discretion is clearly abused. *Detection Systems, Inc. v. Pittway Corp.,* 96 F.R.D. 152, 154 (W.D.N.Y.1982). *See also Sil-Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1514 (10th Cir.1990).

The defendants argue that the magistrate erred as a matter of law in ordering the production of post–1984 acellular vaccine research. Specifically, defendants argue that the magistrate ordered the discovery without the requisite showing of both relevancy and necessity of the information.

Upon motion and for good cause shown, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; ...." Fed.R. Civ.P. 26(c)(7). Trade secrets are not absolutely privileged. *Centurion Industries, Inc. v. Warren Steurer and Associates,* 665 F.2d 323, 325 (10th Cir.1981).

> To resist discovery under Rule 26(c)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure. If proof of relevancy or need is not established, discovery should be denied. On the other hand, if relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.

*Id.* at 325–26 (citations and footnotes omitted). The decision whether trade secrets are relevant and whether the need outweighs the harm of disclosure lies within the sound discretion of the trial court. If the trade secrets are relevant and necessary, the contents of a protective order to safeguard the disclosure of those trade secrets are also within the trial court's discretion. *Id.* at 326.

The defendants' brief addresses the following five factors extracted from the *Centurion* case: (1) the existence of trade secrets; (2) whether disclosure would be harmful to defendants; (3) whether the post–1984 research information is relevant; (4) whether plaintiffs established the necessity of discovering the post–1984 research materials; and (5) whether the harm to defendants outweighs the need for the materials. The court shall address these same five factors in turn.

### 1. Existence of Trade Secrets

There appears to be no real dispute that the defendants' research into an acellular pertussis vaccine involves trade secrets.

### 2. Harm of Disclosure

There also appears to be no real dispute that public disclosure of such trade secrets could be very harmful to the defendants, given the competition among pharmaceutical manufacturers to be the first to market an acellular pertussis vaccine.

### 3. Relevance

Relevance is determined according to the substantive law applicable to the cause of action. *See* Fed.R.Evid. 401. Only relevant evidence is admissible at trial. *See* Fed.R.Evid. 402. Under the discovery rules, however, "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Relevancy for purposes of discovery is construed more broadly than relevancy at trial. *Centurion Industries, Inc. v. Warren Steurer and Associates,* 665 F.2d 323, 326 (10th Cir.1981).

Under Alaska law (the parties have stipulated that Alaska law governs this action, *see* Pretrial Order, Doc. 140), factors for the factfinder to consider in a products liability case include the feasibility of a safer alternative design, the cost of an improved design, and the adverse consequences to the product and the consumer that would result from an alternative design. *Caterpillar Tractor Co. v. Beck,* 593 P.2d 871, 885–86 (Alaska 1979) (*Beck I*). The Alaska Supreme Court has ruled that "[e]vidence about the character of the product, as reflected in subsequent modifications or accidents, is highly probative in strict liability cases, and therefore is not excludable on relevancy grounds." *Caterpillar Tractor Co. v. Beck (Beck II),* 624 P.2d 790, 794 (Alaska 1981). The evidence

plaintiffs seek to discover—whether any subsequent modifications or improvements have occurred—is relevant under the applicable law.

Defendants argue that design defects are to be measured by the knowledge and information which existed when the product left the hands of the manufacturer, citing *Beck I,* 593 P.2d at 886 n. 52. In *Beck II,* the Alaska Supreme Court stated that the dictum contained in footnote 52 in *Beck I* contained a "somewhat unfortunate choice of words" and that the meaning of footnote 52 should be limited to the principle that a substantial change in the product after it leaves the manufacturer's hands will ordinarily defeat a claim based on strict tort liability. *Beck II,* 624 P.2d at 793. In a products liability action, evidence of subsequent measures is admissible on the feasibility of alternative designs as well as defective condition. *Id.* Even in negligence actions, evidence of subsequent measures or accidents is generally admissible to impeach or prove that the product was capable of causing injury. Such evidence is likewise admissible for the same issues in strict liability actions. *Id.* at 793 n. 8. Since plaintiffs are seeking matters which could be admissible at trial under the substantive law of Alaska, they are entitled to discover these matters. *See* Fed.R.Civ.P. 26(b)(1) (discovery allowed on any relevant, nonprivileged matter which is reasonably calculated to lead to the discovery of admissible evidence).

State of the art, or conformity with industry-wide practices, does not protect a manufacturer from liability. *Beck I,* 593 P.2d at 887. The jury may consider what other manufacturers were doing to the extent it indicates technological feasibility of an alternative design. *Heritage v. Pioneer Brokerage & Sales, Inc.,* 604 P.2d 1059, 1063 n. 12 (Alaska 1979). Scientific knowability of the injurious nature of the product is a relevant consideration; otherwise, absolute liability would be imposed on a manufacturer who had no knowledge of danger. *Id.* at 1063–64.

The fact that no acellular vaccine was licensed by the FDA in 1984 or thereafter may be relevant to the issue of feasibility of marketing an acellular vaccine. This fact might undercut plaintiffs' contention that a safer product was feasible. Because the FDA has not licensed an acellular pertussis vaccine does not excuse the defendants from liability, since state of the art is not a defense in Alaska. Plaintiffs must be allowed to discover the acellular research to determine whether production of an acellular vaccine was feasible when plaintiff was inoculated.

4. Necessity

Plaintiffs have no other source for this particular information. Only by access to the defendants' research can plaintiffs determine what that research demonstrates. That the evidence sought by plaintiffs may be redundant or cumulative of other evidence the plaintiffs allegedly possess may be grounds for objection to its admission at trial. Defendants have not demonstrated that the discovery sought is "unreasonably cumulative or duplicative." Fed.R.Civ.P. 26(b)(1)(i).

5. Balancing of Harm versus Need

The harm to defendants can and will be lessened by the entry of a protective order limiting the further dissemination of this information. The court has not ruled on the admissibility of this acellular research information at the trial of this matter. If this information is admissible at trial, the court can make the appropriate orders regarding confidentiality at that time. Further, the magistrate agreed with defendants' arguments regarding the Biken vaccine and stated that the defendants "should not be required to produce documents or records which will require them to violate their contract with Biken or to disclose any information they do not possess." Doc. 137, at p. 21. The court agrees with this ruling of the magistrate. The trade secrets of nonparty Biken are entitled to greater protection. The defendants shall not be required to disclose any information regarding the Biken vaccine which would cause them to violate the confidentiality agreement with Biken.

The court finds that the magistrate properly analyzed the factors governing discoverability of the defendants' trade secret acellular pertussis vaccine research. As stated above, discovery may be had only as to matters which will not cause the defendants to violate their confidentiality agreement with the Japanese company regarding the Biken vaccine. No discovery shall occur until a protective order (either submitted by the parties or drawn by the magistrate) is entered.

IT IS BY THE COURT THEREFORE ORDERED that the defendants' objections and appeal of the magistrate's order (Doc. 146) are hereby overruled.